STATE, BENJAMIN F. DAVIS, PROSECUTOR, v. TOWNSHIP OF DELAWARE.

An order of a court refusing to amend its records, is not reviewable for error.

This writ brings up an order discharging a rule made in the Court of Quarter Sessions of Camden county. The rule discharged was a rule to show cause why a judgment entered in a cause in said court, wherein said Davis was defendant, and the overseer of the poor of said township was plaintiff, should not be set aside.

Argued at June Term, 1880, before Justices DIXON and REED.

For the prosecutor, *J. E. Troth* and *T. H. Dudley.*

For the defendant, *A. C. Scovel.*

The opinion of the court was delivered by

REED, J. This cause was before this court at February Term, 1879. The case is reported in 12 *Vroom* 55. The objective point of attack was then, as now, an alleged irregularity in taking the verdict upon which the judgment is entered. The cause was a bastardy proceeding. On the occa-

sion of the trial of the appeal in the Sessions, the verdict was taken by the crier, in the absence of the judges.

Upon this verdict, an order of filiation was made. This order was brought into this court by a writ of *certiorari*, testimony taken as to facts in respect to the taking of the verdict, and, upon the argument, it was insisted that the verdict taken before the crier alone was a nullity, and so would not support the judgment. The record brought up by the writ set out that the verdict was returned into court.

This court held that no error could be assigned, to the effect that a fact existed which contradicted the record. It was therefore ruled that, inasmuch as the record showed the return in open court, no evidence could be received to show that the verdict was not so taken. That writ was dismissed. The prosecutor then applied to the Court of Quarter Sessions for a rule to show cause why the judgment of filiation should not be set aside. Testimony was taken, to be used upon the argument of the rule, which testimony was directed to the point that the verdict was not taken in court, but before the crier alone, Upon argument, the rule to show cause was discharged. The order discharging the rule, and the proceedings preceding it, are again brought into this court by the present writ.

The record now in court presents the same aspect, in regard to the point of controversy, as when it was here before. It contains, still, the statement that the jury returned in court and delivered their verdict. It is apparent, under the rule previously announced in this case, that so long as this statement remained as part of the record, no attack could be made upon the judgment, based upon the untruth of that statement. The rule to show cause, therefore, to receive any consideration, must be treated as a rule to amend the record, by eliminating the objectionable statement from the record, so that there shall be no verdict to support the judgment. Treating the rule—as I think we fairly can treat it—as including all this in its attack upon the judgment, the prosecutor very properly

made his application to the court wherein the record was made.

The power of the Court of Quarter Sessions to make such an amendment, is unquestioned. The power inheres, in every tribunal, to take care that the record of its transactions shall speak the truth.

Errors may exist in the record, by accident, by misunder-standing the rulings of the court, or by negligence, or mis-prision of the clerk. The record imports absolute verity, and it is of the utmost consequence that it should be scanned with the closest circumspection, and whenever it is manifest to the court, either by judicial knowledge or conclusive evi-dence, that the record does not speak the truth, that it should be corrected. It is therefore not surprising that courts have always exercised their authority in this respect, by adding to the record that which had clearly been omitted, and by expunging from the record that which was untrue.

Nor is the right to exercise this privilege limited to any stated period of time. There is no limitation which will prevent a correction where there is that conclusive evidence which satisfies the court that the amendment should be made.

It was propounded, upon the argument, that the power of the court ceased with the term in which the judgment was entered. This view is the result of a failure to distinguish between the change of a judicial act and a change in the record of a judicial act, so as to cause the record to con-form to the truth. There is abundant authority to the effect that a judgment rendered by a tribunal can be modified during the term in which it is entered, but that it cannot be changed subsequently. But there is no authority which holds that if the clerk enters a judgment which differs from that really rendered, the court cannot, at any time, cause the record to state the judgment truly. This distinction is clearly defined in the cases of *Dewey* v. *Ten Eyck, Penn.* *1023, and *Probasco* v. *Probasco, Id.* *1013.

The following are cases in which the amendment of records

have been made within various periods of time, subsequent to the making of the record: *Hart* v. *Reynolds*, 3 *Cow.* 42, *n.*; *Tillotson* v. *Cheetham*, 3 *Johns.* 95; *Balch* v. *Shaw*, 7 *Cush.* 282; *Doty* v. *Rigour*, 9 *Ohio St.* 526; *Mayo* v. *Whitsen*, 2 *Jones L.* 231; *Paddon* v. *Bartlett*, 3 *Ad. & El.* 885.

It is apparent, from these cases, that there existed no temporal limitation upon the power of the court to make the amendment. Nor did the court refuse to make an amendment, upon the ground of a want of power. The action of the court was founded upon the fact that over two years had elapsed before making the application to amend; that the error, if proven, was technical, and that, in the meantime, a suit had been brought upon the bond given in the bastardy proceeding. It is the propriety of this action of the Court of Quarter Sessions that we are called upon to review.

It does not involve a question of power, but a question of judicial discretion. Were it the former, it would be reviewable; as it is the latter, we have no more power to review it than if it was a refusal to amend the pleadings in a cause.

The unreviewable character of the act of the court, in amending or refusing to amend the pleadings, is well settled in this state. *Stew. Dig.*, p. 460, § 6.

The action of a court relative to any part of its records, is within the same rule. It is an act of discretion, and not of right. Each court is the guardian of its own record, and in each court subsists the sole authority to see that its proceedings are accurately recorded. The leading case in England, upon the subject now under discussion, is probably that of *Mellish* v. *Richardson*, 1 *Cl. & Fin.* 224. In this case, a writ of error had been taken to the Court of King's Bench, from a judgment rendered in the Common Pleas. The judgment brought up was reversed. In the meantime, both the verdict and the judgment, in the Common Pleas, had been in that court amended. Afterward, the Court of King's Bench amended the transcript, in accordance with the amendment in the Common Pleas, and the Court of King's Bench then, upon the

amended record, affirmed the judgment of the Common Pleas. Upon this judgment of affirmance, a writ of error was brought to the House of Lords. After argument there, Lord Tenter-den said : "This case seems to resolve itself into this question—whether it is competent for a court of error to examine the propriety of an amendment of the record in the court below, on the order for the amendment being sent up as a part of the record." Upon the question being put, it was ruled that a court of law has authority over its own records, which it may amend even after error is brought. It was further ruled that a court of error will not inquire into the propriety of an amendment made in the court below. In the subsequent case of *Scales* v. *Cheese*, 12 *M. & W.* 685, the writ of *distringas juratores* and the Nisi Prius record were amended by order of the Court of Exchequer. Upon order brought to the Exchequer Chamber, this amendment was assigned for error. The writ was dismissed, the court observing that, after the case of Mellish *v.* Richardson, the matter should not be discussed.

The same rule obtains in the federal courts. *Marine Co.* v. *Hodgson*, 6 *Cranch* 206.

In *Matheson* v. *Grant*, 2 *How.* 263, the record of a verdict was amended in the Circuit Court, and it was held not review-able by writ of error.

The same doctrine is announced in *Varnum* v. *Bissell*, 14 *Pick.* 191, and in *Luysten* v. *Sniffin*, 1 *Barb.* 428.

The rule which stands in the way of a review of an order to amend, of course prevents a review of an order refusing to amend. Therefore, a writ of *mandamus* will not go to a court to compel it to alter its record, so that it will correspond with the state of facts disclosed by affidavits. *High on Mandamus*, § 154; *Rex* v. *Justices of Suffolk*, 5 *N. & M.* 139.

In *Rex* v. *Hewes*, 3 *Ad. & El.* 725, the jury returned a verdict of "guilty by mischance." After some discussion by counsel as to the effect of this verdict, the jury were told that they must find either guilty or not guilty. They found "guilty, with a recommendation to mercy." Application was

made to the Court of King's Bench for a writ of *mandamus* to compel the court below to alter the minute of the verdict, so as to show the first verdict. The court refused the *mandamus*, upon the ground that they could not interfere with the exercise of a discretionary power in the lower court. Littledale, J., remarked: "If a motion for a *mandamus* were entertained in such a case as this, parties would come from every court of criminal jurisdiction in the kingdom, to have records altered."

The practice in this state has been in accord with the rule supported by these cases. For instance, it is a well-settled rule that, upon *certiorari*, the certificate of the justice as to what occurred in the cause before him, cannot be contradicted. *Stew. Dig.*, "*Certiorari*," *p*. 127, § 193–196.

Contentions are not unfrequent as to whether the justice has stated correctly, or stated all that occurred before him.

Now, while this court will compel him to certify what occurred, it will not compel him to certify that a fact occurred in a particular way. Nor is there an instance of a successful attempt to review a refusal of a justice to certify a matter as occurring in a particular way, or a refusal to change his certificate, in respect to a matter which his transcript covers.

And I do not think there is an instance where this court has asserted a right to control an inferior court in regard to the accuracy of the records of that court.

My conclusion is, that the order brought here by this writ is one not reviewable, and that the writ should be dismissed, with costs.